FILED

08/04/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: PR 20-0265

FILED

07/28/2020

Commission on Practice
of the Supreme Court
State of Montana

BEFORE THE COMMISSION ON PRACTICE OF THE

SUPREME COURT OF THE STATE OF MONTANA

* * * * * * * * * * * * *

IN THE MATTER OF CASEY NIXON,

An Attorney at Law,

          Respondent.

) Supreme Court No. PR 20-0265
)
) ODC File No. 19-077 and 19-133
)
) **FINDINGS OF FACT, CONCLUSIONS**
) **OF LAW AND RECOMMENDATION ON**
) **RULE 26 CONDITIONAL ADMISSION**
)

Hearing on the Respondent's Conditional Admission and Affidavit of Consent came before an Adjudicatory Panel of the Commission on Practice on July 16, 2020, pursuant to notice. Members of the Commission hearing the matter were Mick Taleff, chair, Rich Ochsner. Carl Mendenhall, Heather Perry, Jean Faure, Kelly Gallinger, Bob Savage and Nels Swandal. The Office of Disciplinary Counsel was represented by Chief Disciplinary Counsel Pamela D. Bucy. Respondent appeared *pro se*.

Based upon the Conditional Admission and the information provided during the hearing, the Commission finds the following facts, reaches the following legal conclusions and submits its recommendation for discipline to the Montana Supreme Court.

**FINDINGS OF FACT**

1. Nixon was admitted to the practice of law in the State of Montana in 2012, at which time he took the oath required for admission, agreed to abide by the Montana Rules of Professional Conduct, the Disciplinary Rules adopted by the Supreme Court, and the highest

*ORDER - Page 1*

standards of honesty, justice and morality, including, but not limited to, those outlined in parts 3 and 4 of Chapter 61, Title 37, Montana Code Annotated.

2. Based upon a Conditional Admission and Affidavit of Consent filed June 18, 2020, and representations at the hearing, Nixon admitted the following facts:

(i) Dwight Rose ("Dwight") and Eugene Rose ("Gene") were in a motor vehicle accident in August 2013. After unsuccessfully settling their claims with the at-fault driver's insurance company, they hired Nixon to represent them on a contingency fee basis. Written contingency fee agreements were provided to both Gene and Dwight. However, the agreement with Dwight was never signed or otherwise executed. Neither Dwight nor Nixon had a written contingency fee agreement outlining the percentage of the attorney fee, an hourly rate, the basis of the fee, or the scope of the representation. Although a written agreement was provided to Dwight, the rate of the contingency fee was not made clear and neither Dwight nor Gene signed a fee agreement with Nixon.

(ii) In July 2015, Nixon filed a lawsuit against the at-fault driver in the accident in Yellowstone County District Court on Dwight and Gene's behalf. He collected $55 from Gene to cover the service fee, but the Complaint was not served on the defendant.

(iii) In November 2017, Nixon settled Gene's claim with the at-fault driver's insurance company for $3,425 "new money." Dwight's case settled in April 2019 for $5,000 "new money." Both Gene and Dwight executed releases of the at-fault driver in exchange for the settlement funds.

(iv) In March 2019, Nixon received a letter and check in the amount of $124.95 from the insurance company as medical expense reimbursement to Dwight. He did not timely disburse these funds to Dwight. Upon receipt of the $124.95 check from the insurance company, Nixon

immediately deposited the check into his IOLTA trust account. Within days thereafter, he transferred the money from his IOLTA trust account to his Rocky Mountain Bank personal checking account and then immediately withdrew those funds.

(v) Upon receipt of Gene's settlement funds, Nixon deposited the $3,425 settlement check into his IOLTA trust account, wrote himself a check for $1,425 (a 42% contingency), and withdrew the remaining $2,000, which he paid to Gene by cashier's check.

(vi) Upon receipt of Dwight's "new money" settlement funds, Nixon deposited the $5,000 check into his IOLTA trust account, immediately transferred that amount to his personal checking account, then withdrew it, all of these events occurring on the same day.

(vii) Nixon failed to obtain either Dwight's or Gene's signatures on a settlement distribution sheet, did not communicate the way in which funds would be disbursed, and did not obtain their consent to the distribution. Dwight received a total of $2,765 of his $5,000 settlement. Nixon wrote a check dated May 16, 2019 payable to Dwight in the amount of $2,765, not from his IOLTA account but from another of his personal checking accounts. Although there were insufficient funds in that account to cover the check when written, he had sufficient cash on hand to deposit and did so. The check was negotiated on June 10, 2019.

(viii) When calculating his fee on Dwight's case, Nixon erroneously calculated it at a third rather than the (unwritten) agreed 30%. In doing so, he overpaid himself $79.16.[1]

(ix) Beginning in April 2019, Nixon experienced significant trauma and personal turmoil which distracted him from his work obligations. By letters and/or emails dated August

[1] In the Complaint, the ODC charged that the distribution of Dwight's settlement represented a 45% contingency. Although the admitted facts as to the amounts paid to Nixon and Dwight support this allegation, the Conditional Admission only acknowledges the overpayment as less than $80 based on a 30% rather than a 1/3 fee. Regardless of this seeming contradiction, Nixon admits he overcharged his client.

*ORDER - Page 3*

16, 2019, October 4, 2019, December 4, 2019, and January 21, 2020, and in several subsequent communications, the Office of Disciplinary Counsel requested that he respond to the allegations in Dwight's grievance and provide certain additional information and documents. Despite his promises to provide the requested information, he repeatedly failed to do so. Nixon did not cooperate with the Office of Disciplinary Counsel until after the Complaint was filed in this matter. However, once the Complaint was filed Nixon did cooperate with the ODC and filed his Conditional Admission and Affidavit of Consent rather than an Answer.

(x) On December 17, 2018, Nicholas Carey ("Carey") retained Nixon and paid him $2,000 to assist him in a civil rights matter.[1] Throughout the following year, Nixon failed to complete any legal services on Carey's behalf, and failed to reasonably communicate with Carey unless Carey initiated the contact.

(xi) In Carey's grievance, he requested a refund of his retainer. Nixon communicated to the Office of Disciplinary Counsel that he intended to refund $1,500 of the retainer to Carey but failed to do so.

(xii) Nixon failed to complete the legal work for Carey, did not safekeep and maintain Carey's retainer in his IOLTA trust account, did not keep Carey's funds separate from his own funds, and used Carey's funds for Nixon's own purposes before they were earned.

(xiii) In relation to Carey's grievance, by letters dated December 6, 2019, and February 3, 2020, the Office of Disciplinary Counsel requested that Nixon respond to the allegations. Despite multiple direct and attempted communications with him prior to February 4, 2020 and over the next two and one-half months, despite his promises to provide a response and the requested information, Nixon failed to do so.

---

[2] There is some uncertainty whether the payment was a retainer or a flat fee, but for purposes of these proceedings the distinction is not material.

*ORDER - Page 4*

## CONCLUSIONS OF LAW

Based upon the foregoing admitted facts, the Commission concludes Nixon violated Rules 1.15; 1.18; 1,3, 1.4, 1.5(a), 1.15(b), 1.16(d) and 8.1(b) of the Montana Rules of Professional Conduct.

## RECOMMENDATION FOR DISCIPLINE

Nixon tendered his admission in exchange for the following discipline:

    a. An indefinite suspension for a minimum of one (1) year;

    b. Payment of restitution to Dwight in the amount of $79.16;

    c. Payment of restitution to Carey in the amount of $1,500;

    d. Prior to reinstatement, he must comply with the following conditions:

        (i) Meet all Continuing Legal Education requirements and pay any and all attorney license dues owing required to maintain an active license to practice law;

        (ii) Undergo a chemical dependency evaluation by a licensed clinical addiction counselor and undergo a mental health evaluation by a licensed clinical psychiatrist or psychologist at his own expense and submit the evaluation reports to the ODC;

        (iii) Provide releases to allow the ODC and his providers to discuss the reports and findings and his continued treatment progress; and

        (iv) Comply with Rules 30 and 32, MRLDE.

    e. Upon reinstatement, he must comply with the following conditions for a period of three (3) years:

(i) Comply with all recommended treatment plans of his addiction counselor and mental health care providers and continue treatment for mental health and/or chemical dependency issues pursuant to the recommended treatment plans;

(ii) Consult with Mike Larson, Lawyers' Assistance Program (LAP) Coordinator, and file with the ODC Mr. Larson's written recommendations for the means by which he can best address the emotional, mental health and chemical dependency issues he had been facing in order to allow him to effectively and ethically return to the practice of law;

(iii) Meet with Mr. Larson monthly by phone or in person and/or attend a LAP meeting held in the nearest city to him weekly or as often as the meetings take place;

(iv) Participate in the ODC's Mentorship Program and complete the supervised task checklist;

(v) Not engage in the solo practice of law without written approval of his mentor, his health care providers and the ODC, and upon submitting written, adequate procedures relative to case management and adhering to those procedures; and

(vi) Obey all laws and the Montana Rules of Professional Procedure.

f. Any violation of the MRPC or any federal or state law will constitute violation of a Court Order and will result in further discipline.

g. Payment of costs incurred by the Office of Disciplinary Counsel and the Commission on Practice in connection with this matter.

In the event this Court accepts this Recommendation, the Office of Disciplinary Counsel has agreed to dismiss Count Five of the Complaint and all allegations of violation of M.R.P.C. 8.4(c).

## RECOMMENDATION FOR DISCIPLINE

Although the Commission is troubled by the conduct to which Nixon has admitted, his repeated failure to respond to the Office of Disciplinary Counsel, or to follow through with promised submissions to it, the Commission is satisfied that the conditions to which he has agreed are consistent with protection of the public and will assist in enabling Nixon to address the issues which led to his unethical conduct. In making this recommendation, the Commission has considered the factors in Rule 9B, MRLDE. The Commission has taken into account the gravity and nature of the duties violated, which are numerous and involve duties owed to clients, the legal system, and to the profession. Also considered has been Nixon's compromised mental state due to his admitted addiction and the upheaval in his personal life. The actual injury caused by his misconduct involved a total of less than $5,000 to three clients. The Commission notes the existence of the mitigating factors of his mental health issues, the fact that he has no record of prior offenses, and he has expressed sincere remorse for his conduct.

Accordingly, the Commission accepts Nixon's proposed form of discipline as its recommendation to this Court.

Respectfully submitted this 28th day of July, 2020.

COMMISSION ON PRACTICE OF THE SUPREME
COURT OF THE STATE OF MONTANA

By: _____
Ward "Mick" Taleff, Chair

ORDER - Page 7

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of July, 2020, I served a true and correct copy of the foregoing document by email to pbucy@montanaodc.org and on Respondent by email to caseycnixon@gmail.com and by regular mail, postage prepaid, to:

Casey Nixon
Attorney at Law
3914 Barry Drive
Billings, MT 59105

*Shelly Smith*

Shelly Smith, Office Administrator

*ORDER - Page 8*